UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SHUBHAM, LLC** | **CIVIL DOCKET NO. 6:21-CV-03027** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **GREAT AMERICAN INSURANCE COMPANY and INDEPENDENT SPECIALTY INSURANCE COMPANY** | **MAGISTRATE DAVID J. AYO** |

## MEMORANDUM RULING AND ORDER

Before the Court is a MOTION TO COMPEL ARBITRATION AND TO STAY OR, ALTERNATIVELY, DISMISS THE PROCEEDINGS (the "Motion") [Doc. 26] filed by Defendant Independent Specialty Insurance Company ("ISIC"). The Motion is opposed by Plaintiff Shubham, LLC ("Plaintiff") [Doc. 29], and ISIC filed a Reply brief [Doc. 30]. After careful consideration, and for the following reasons, ISIC's Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff owns property located at 2140 W. Willow Street in Scott, Louisiana (the "Property"). ISIC issued Plaintiff a surplus lines commercial property insurance policy bearing Policy No. EPLE242228 (the "Policy") insuring the Property against perils including wind, hail, and water. Plaintiff alleges that on August 27, 2020, the Property sustained extensive damage due to Hurricane Laura, a Category 4 hurricane, and on October 9, 2020, the Property sustained additional damage as a result of Hurricane Delta, a Category 2 hurricane.[1] Plaintiff alleges that the Policy

---

[1] In its Complaint, Plaintiff alleges that "Hurricanes Laura and Delta caused substantial amounts of damaged the [sic] Insured Premises' exterior, interior, and roof,

was in full force and effect during both hurricanes, and that the payments made by ISIC to date are inadequate to cover the cost of repairs caused by the hurricanes. Plaintiff further alleges that ISIC's delays in paying the amounts due under the Policy have delayed Plaintiff from becoming fully operational.

The Policy includes an arbitration clause, which provides as follows:

**SECTION H – Property Loss Conditions**

**\* \* \***

**4. Arbitration Clause**

All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.

[Doc. 26-4] (the "Arbitration Provision").

Plaintiff filed suit against Great American Insurance Company on August 26, 2021 [Doc. 1], but amended its Complaint on November 24, 2021, to substitute ISIC as the proper defendant [Doc. 12]. At that time, the case was pending before Judge James D. Cain, Jr. in the Lake Charles Division of the Western District of Louisiana. Under Section 3 of Judge Cain's Case Management Order No. 1 (the "CMO") [Doc. 2], within 14 days of the filing of the defendant's responsive pleading, either party was permitted to petition Judge Cain to opt out of the Streamlined Settlement Process ("SSP"). Neither party opted out of the SSP in this case, and both parties participated

---

allowing water to infiltrate the interior as a direct result of that damage and otherwise causing significant damage to and throughout the buildings, as well as to the structure of the buildings. The storms also caused significant damage to Plaintiffs' [sic] business personal property located at the Insured Premises." [Doc. 1, ¶ 12].

in the SSP, first, by exchanging initial disclosures in March 2022. Then, on March 31, 2023, Plaintiff and ISIC unsuccessfully attempted to resolve this case at a court-ordered mediation pursuant to the CMO. The parties scheduled a second mediation for March 8, 2024. On March 7, 2024, the day before the second scheduled mediation, ISIC filed the instant Motion. The mediation proceeded as scheduled on March 8, 2024, but was unsuccessful in resolving this case. On April 30, 2024, the case was transferred to this Court. [Doc. 31].

In the instant Motion, ISIC argues that, pursuant to the Policy's Arbitration Provision, the parties agreed to arbitrate all merits disputes and also agreed to delegate gateway issues, including arbitrability, to the Arbitration Tribunal. Plaintiff responds that, even if there is a valid and enforceable Arbitration Provision in this case, ISIC waived its right to arbitrate by engaging in litigation conduct for the majority of the time the case has been pending. All issues having been fully briefed by the parties, the Motion is now ripe for review.

## LAW AND ANALYSIS

Generally, enforcement of an arbitration agreement involves two analytical steps. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is contract formation, that is, whether the parties entered into any arbitration agreement at all. *Kubala*, 830 F.3d at 201. The second involves contract interpretation to determine whether the claim is covered by the arbitration agreement. *Id.* Ordinarily both steps are questions for the court. *Id., citing Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the

arbitration agreement contains a delegation clause[2] giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. As explained in *Kubala*:

> Ordinarily this type of dispute involves two layers of arguments – the merits (does Kubala have a right to back pay?) and arbitrability of the merits (must Kubala bring his claim for back pay in arbitration rather than in court?). The presence of a delegation clause adds a third: "Who should have the primary power to decide" whether the claim is arbitrable. Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.

830 F.3d at 201 (internal citations omitted), *citing First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995) and *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 177 L.Ed.2d 403 (2010).

Under *Kubala*, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. 830 F.3d at 202. The court performs the first step – an analysis of contract formation – "[b]ut the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide

---

[2] A delegation provision is an "agree[ment] to arbitrate 'gateway' questions of 'arbitrability,' such as ... whether [the parties'] agreement covers a particular controversy." *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2777, 177 L.Ed.2d 403 (2010). Parties may agree to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995). Delegation provisions thus normally require an arbitrator to decide in the first instance whether a dispute falls within the scope of the arbitration provision. *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014), *abrogated by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 139 S. Ct. 524, 202 L.Ed.2d 480 (2019)

whether a given claim must be arbitrated." *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases. *Id.*

ISIC argues that the Arbitration Provision in this case is valid and enforceable under both federal and Louisiana law, and that because Plaintiff has not challenged the delegation clause and the arbitrability of claims by an arbitrator, the matter must be referred to arbitration. Plaintiff counters that regardless of whether the Arbitration Provision is valid and enforceable, this case should not be referred to arbitration because ISIC waived its right to arbitration in light of its litigation conduct. The Court agrees.

In *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 263–64 (5th Cir. 2021), the Fifth Circuit engaged in a thorough analysis of the issue of litigation conduct waiver before reaffirming the general rule that waiver is a judicial issue:

> Because "[a]rbitration is a matter of contract," the "power and authority of arbitrators in an arbitration proceeding is dependent on" the parties' agreement. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) (quotation omitted); *accord BG Grp. v. Republic of Argentina*, 572 U.S. 25, 33–34, 134 S. Ct. 1198, 188 L.Ed.2d 220 (2014). Here, the parties' agreement is silent on the specific question of who should decide whether IEVM waived its right to arbitrate by pursuing litigation. So we must "determine the parties' intent with the help of presumptions." *BG Grp.*, 572 U.S. at 34, 134 S. Ct. 1198.
>
> Most circuits to consider the issue have held that litigation-conduct waiver is presumptively a judicial matter. *See Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) ("[T]he question before us is presumptively for a court and not an arbitrator to decide. Every circuit that has addressed this issue—whether a district court or an arbitrator should decide if a party waived its right to arbitrate through litigation conducted before the district court—has reached the same conclusion." (citation omitted)). *But see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (holding that

> all waiver challenges should be submitted to an arbitrator). We aligned with that majority in two recent unpublished decisions. *See Sabatelli v. Baylor Scott & White Health*, 832 F. App'x 843, 848 n.3 (5th Cir. 2020) (per curiam); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 802–03 (5th Cir. 2017) (per curiam). And we see no reason to change course here. As we explained in *Vine*, "parties would expect [a] court to decide litigation-conduct waiver" because the issue "implicates courts' authority to control judicial procedures or to resolve issues arising from judicial conduct." 689 F. App'x at 803 (emphases omitted) (*quoting Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)). Thus, a presumption that courts decide the consequences of litigation conduct best captures the intent of the typical contracting party.

*Id.* at 263–64.

Finding that the parties failed to contract around the general rule that courts resolve litigation conduct waivers, the court went on: "[W]aiver of arbitration is a disfavored finding." *Id.* at 266, *citing Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). But we will find it "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." … Substantial invocation and prejudice are questions of federal law in every case where the FAA applies." *Id.*, *citing Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 & n.4 (5th Cir. 1986); *Vine*, 807 F. App'x at 327.

Substantial invocation occurs when a party performs an "overt act in [c]ourt that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.*, *citing Nicholas*, 565 F.3d at 907-08. And whether a party has been prejudiced is a "fact-dependent inquiry" that asks if the party suffered "delay, expense, or damage to [its] legal position" because of an opposing party's pursuit of litigation. *Id.*, *citing Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004).

In the instant case, it is undisputed that the Arbitration Provision in the Policy contains a delegation clause, which would ordinarily require this Court to refer the matter to arbitration. However, because the Plaintiff is arguing that ISIC waived its right to proceed in arbitration by virtue of its litigation conduct, there must also be specific indicia that the parties contracted out of the general rule that the issue of waiver should be decided by the Court. Neither party's briefing nor the Arbitration Provision itself addresses that issue. The Court therefore finds that the general rule applies, and this Court will consider whether Plaintiff demonstrates sufficient evidence of substantial invocation and prejudice.[3]

With respect to the issue of substantial invocation, the record shows that Hurricane Laura hit in August 2020, while Hurricane Delta hit two months later in October 2020. Plaintiff filed the instant lawsuit in August 2021 and amended its Complaint in November 2021 to name ISIC as the proper party defendant. [Doc. 12]. Importantly, ISIC did not invoke arbitration in its Answer to the Amended Complaint. [Doc. 17]. Furthermore, although the Court's CMO permitted the parties to indicate whether they wished to opt out of the Court's SSP, ISIC declined to do so. In March 2022, the parties exchanged initial disclosures, and one year later, in March 2023, the parties unsuccessfully participated in their first court-ordered mediation pursuant to the CMO. At no time before the first mediation did ISIC seek to compel arbitration. Almost one year later, the parties scheduled a second mediation for March 8, 2024. It was not until the day before the second mediation that ISIC sought

---

[3] The party defending against enforcement of the arbitral award bears the burden of proof. *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 819 (5th Cir.).

to compel arbitration. This record of litigation-related activities shows that ISIC was operating under the Court's CMO, was engaging in the exchange of initial disclosures, and was complying with court-ordered mediations. ISIC did not seek to compel arbitration until after the first unsuccessful mediation and after the second mediation was scheduled. Under these circumstances, the Court finds that the defendant substantially invoked this Court's jurisdiction and the litigation process it established for hurricane-related claims.

With respect to the issue of prejudice, "a party's failure to timely assert its right to arbitrate is ... relevant to the prejudice determination." *Int'l Energy*, 999 F.3d at 267, *citing Republic Ins.*, 383 F.3d at 346. While there is no hard-and-fast rule for how long is too long, the Fifth Circuit has found delays of 10 and 18 months to be "sufficiently troubling." *Id.*, *citing Nicholas*, 565 F.3d at 910 (10 months); *MC Asset Recovery LLC v. Castex Energy, Inc. (In re Mirant Corp.)*, 613 F.3d 584, 591 (5th Cir. 2010) (18 months). Delay coupled with extensive pretrial litigation is even more problematic because of the "inherent unfairness" that occurs when a party "forces it[s] [opponent] to litigate" a dispute "and later seeks to arbitrate" it. *Id.*, *citing Republic Ins.*, 383 F.3d at 346 (quotation omitted); *see also In re Mirant Corp.*, 613 F.3d at 590 (rejecting a litigant's attempt to obtain "a second bite at the apple through arbitration").

This case is similar to *Soc'y of Roman Catholic Church of DI v. Catholic Mut. Relief Soc'y of Am.*, in which Judge Cain denied the defendant's motion to compel arbitration in a hurricane case, in part, on grounds that the defendant insurer had waived its right to arbitration by virtue of its delay, noting:

> Catholic Mutual argues that because it participated in the Court-ordered mediation, and asserted its arbitration demand in its answer, it did not waive its right to arbitrate. The Court disagrees. There is no language in the Case Management Order that would prohibit a party from demanding arbitration (notwithstanding that this Court finds that the arbitration provision is unenforceable). Catholic Mutual could have demanded arbitration at any time, prior to filing the lawsuit or during the Streamlined Settlement Process. Catholic Mutual only demanded arbitration after the Diocese filed a Motion to Enforce Settlement Agreement.
>
> …
>
> The Hurricanes that precipitated the parties dispute occurred over three (3) years ago. This case was filed over two (2) years ago (October 1, 2021).

2023 WL 8723194, at *5 (W.D. La. Dec. 18, 2023) (Cain, J.).

Here, ISIC did not invoke arbitration in its Answer to the Amended Complaint, and it did not opt out of the SSP to pursue arbitration. Rather, ISIC participated in the exchange of initial disclosures and a first unsuccessful mediation. ISIC did not immediately invoke arbitration after the first unsuccessful mediation, waiting another year to attempt to compel arbitration after the second mediation was scheduled. At that point, more than three years had passed since the hurricanes giving rise to the litigation occurred, and more than two years had passed since the Plaintiff filed the lawsuit. This Court finds that it would be inherently unfair to require Plaintiff to now re-assert its claims in arbitration – thereby further delaying resolution of its claims for hurricane damage. Accordingly, this delay more than satisfies the element of prejudice in the waiver analysis.

## CONCLUSION

Considering the foregoing, this Court finds that the general rule of waiver applies, and ISIC substantially invoked the judicial process to Plaintiff's detriment.

Therefore, although the Policy may contain a valid and enforceable Arbitration Provision, ISIC waived its right to invoke arbitration in this matter by virtue of its litigation conduct.

Accordingly,

IT IS HEREBY ORDERED that the MOTION TO COMPEL ARBITRATION AND TO STAY OR, ALTERNATIVELY, DISMISS THESE PROCEEDINGS [Doc. 26] filed by ISIC is DENIED.

THUS, DONE AND SIGNED in Chambers on this 17th day of May 2024.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE